# COURT OF COMMON PLEAS OF BALTIMORE CITY.

Filed May 19, 1921.

JOSEPH A. KRAFT AND ELSIE M. KRAFT, HIS WIFE, PLAINTIFFS,

VS.

HARRY A. KINNAMON, DEFENDANT.

*William F. Podlich* and *Randolph Barton, Jr.,* for plaintiffs.

*Raymond S. Williams* and *Arthur W. Machen, Jr.,* for defendant.

BOND, J.—

I am ready now to give you a ruling on this prayer. I find the point a close one. In the first place I do not think the arguments made in the cases which have been cited give us a clear guide to a decision, because those cases are not closely similar to the case we have here. After all, it is a question of the intention of this particular lease which we have to decide—it is an interpretation of this, in the light of the circumstances that we have before us. This lease is no ordinary agreement, in which the mere violation or breach of any one clause might give the other party the right to annul the whole relation even in the absence of a specific agreement to that effect. This agreement carries an interest in land—an estate, as lawyers call it—which shall continue in effect unless there is a breach upon which the lease, by express stipulation, may, at the option of the other party, be annulled; and then there will be a forfeiture of the relationship, or whatever you choose to call it.

When we come to this lease, we are confronted with the fact that it is an agreement with a double aspect in that it creates the ordinary relation of landlord and tenant, and then provides and arranges for the joint occupancy of the premises by the parties. The joint occupancy of the property is made an element of this lease—it is not found in ordinary leases—because the plaintiffs wanted to arrange for just that relationship—wanted to arrange for someone as lessee to occupy the premises with them; and there is cogency in the argument that any remedy, other than the cancellation of the lease for default in this term, would be of small practical value. Still, even though these arguments may furnish strong reasons for a forfeiture as a consequence, they could not be given that effect in the absence of an agreement in the lease that a breach, such a referred to, might be, at the option of the landlord, the basis of an entire cancellation of the lease.

Coming back to the question of what is found in the lease, we look to the words themselves; and it seems to me that there ought to be some help in the scheme of the lease—in the drafting of it. The lease starts out with the recital of the intention to build, and then later on of leasing the lower floor to the defendant at the rent named. Then there follows, on page two, a full paragraph containing a list of covenants to be performed on the part of the tenant—they are set out one after another. The tenant covenants to do this and that through to the end. And then there follows an agreement about the rent mentioned in an earlier clause of the lease—that non-payment of the

rent gives the landlord the right to distrain and to re-enter and take possession of the property. It also states that, in the event the property is destroyed by fire or rendered untenantable by fire, then the lease ends—the tenancy is terminated. ·

Then there follows the agreements about the joint tenancy or occupancy of the property. As I read these—and it seems to me it would so appear to anyone reading the lease for the first time—these things were distinctly supplemental to the lease, and subordinate to the minds of the parties. The agreement to furnish the necessary labor for the operation of the heating plant is left indefinite, and may involve questions about the amount or competency of the labor to be furnished; and, as it has been suggested, it would be difficult to decide whether a single day's breach or default in the amount or competency of the labor would be a clear breach of that clause. Was that the intention of the parties—did they intend to bring this clause within the provision in the earlier portion of the lease relating to the violation of any covenants? Was this to be the same as the violation of any other clause? I think that to construe it so would be giving a disproportionate importance to the provision for attending the furnace; and that we must approach the construction of this earlier clause with an inclination against the inclusion of that provision in it. It seems to me that that is improbable. Upon looking at the whole lease and considering the circumstances before us, I do not think that that was the intention of the parties.

The Court of Appeals may disagree with me, and I think that they have a very nice question to decide. I will grant the prayer.